UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN MOFFITT,<br><br>    Plaintiff,<br><br>v.<br><br>DR. D. WINSLOW,<br><br>    Defendant. | Case No. 22-cv-04852-AMO (PR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 24, 25 |

Before the Court is Defendant Dr. D. Winslow's motion for summary judgment under Federal Rule of Civil Procedure 56 on the grounds that Plaintiff Brian Moffitt failed to properly exhaust available administrative remedies before filing suit, as required by the Prison Litigation Reform Act ("PLRA"). Dkt. 24. The operative complaint is the amended complaint. Dkt. 15. Dr. Winslow is the only remaining defendant in this action. *See* Dkt. 16 at 3.

**I.    BACKGROUND**

    **A.    Moffitt's Eighth Amendment Claim**

On August 25, 2022, Moffitt, a state prisoner currently incarcerated at the California Substance Abuse Treatment Facility, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging an Eighth Amendment claim against Dr. Winslow stemming from an incident at San Quentin State Prison ("SQSP") where Moffitt was previously incarcerated. Dkt. 1. Moffitt initially named the following SQSP defendants: Dr. Winslow; Dr. Lenoir; and Registered Nurse ("RN") N. Podolsky.

In his original complaint, Moffitt alleged that a doctor denied him a lower bunk, and the following summary is taken from the Court's December 15, 2023 Order dismissing the complaint with leave to amend:

>Plaintiff's brief complaint states that he was seen by defendant Dr. Lenoir on approximately October 19, 2020. Plaintiff complained of excruciating lower back pain, and that he was having difficulty climbing up to his assigned top bunk. Dr. Lenoir denied a request for a lower bunk accommodation. Several months later plaintiff was transferred to a different prison and was placed in a lower bunk. He also states that the prison should have installed steps or a ladder to make climbing up to the top bunk easier.

Dkt. 12 at 3. The Court dismissed the complaint with leave to amend to provide more information, stating as follows:

>Plaintiff names additional defendants but provides no information about their involvement. In an amended complaint he should provide more details about how they violated his constitutional rights. Plaintiff should also provide more information regarding how Dr. Lenoir's denial of a bottom bunk accommodation was deliberately indifferent to his serious medical needs and violated the Eighth Amendment. He should provide more information regarding his pain and how the denial of a bottom bunk exacerbated the pain and how it was difficult to climb to the top bunk. He should also discuss how the lack of stairs, or a ladder violated his constitutional rights. Simply attaching exhibits is insufficient. Plaintiff must describe his claims in the body of the complaint.

*Id.* at 3-4.

Thereafter, Moffitt filed his amended complaint, in which he only names Dr. Winslow[1] and alleges that he received inadequate medical care and was denied a lower bunk. Dkt. 15 at 2, 4-5.[2] Specifically, Moffitt alleges that Dr. Winslow had been his primary care physician for approximately 16 months, and "[was] aware that [Moffitt] was having severe lower back pain." *Id.* at 4. Moffitt further alleges that Dr. Winslow "knew of [Moffitt's] medical condition and lack of treatment, but took no action to ensure that [Moffitt] received a consultation with an orthopedic [doctor]," and "failed to provide [Moffitt] access to a physician competent to evaluate his lower back pain." *Id.* Moffitt claims that Dr. Winslow's "lack of treatment caused [his] condition to worsen, causing wanton and unnecessary severe pain in his lower back" and "affected his daily activities, which prevented him from climbing to top bunks." *Id.* at 5.

---

[1] In Moffitt's typewritten document entitled, "First Amended Complaint," he lists Dr. Winslow as the only named defendant and refers only to "Defendant" throughout the entire document. Dkt. 15 at 4-5. The Court construed "Defendant" to be Dr. Winslow. *See* Dkt. 16 at 3.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

2

1   On March 14, 2023, the Court found that, liberally construed, the complaint alleged a

2   cognizable Eighth Amendment claim against Dr. Winslow, stating as follows:

> Plaintiff states that he suffers from severe lower back pain and has difficulty climbing to his top bunk. Defendant Dr. Winslow was his primary care physician for sixteen months but denied proper treatment including denying an orthopedic consultation. In addition, defendant denied plaintiff a lower bunk, despite the pain and difficulty in climbing to a top bunk. These allegations are sufficient to proceed against Dr. Winslow.

Dkt. 16 at 3. Because Moffitt did not name any of the other defendants in his amended complaint, the Court dismissed the claims against all other defendants named in his original complaint, including Dr. Lenoir. *Id.* Thereafter, this action was reassigned to the undersigned judge. Dkts. 21, 22.

### B. Moffitt's Efforts to Exhaust His Administrative Remedies

Health Care Correspondence and Appeals Branch Acting Chief K. Martin reviewed Moffitt's "appeal/grievance history" between November 10, 2020 and January 25, 2023 (the date Moffitt filed his amended complaint), which revealed that SQSP's Office of Grievances received one health care grievance for review concerning health care Moffitt received at SQSP. Martin Decl. ¶ 8, Exs. A&B (Dkts. 24-2 at 2, 24-3 at 2-5). Specifically, on November 5, 2020, Moffitt submitted grievance log number SQ HC 20001546 to the Office of Grievances at SQSP for the institution level review. Martin Decl. ¶ 8, Ex. B (Dkt. 24-3 at 4-5). Moffitt did not sign the grievance form in the correct place, which was under "Section A," the portion explaining his health-care complaint at the institutional level. *See* Dkt. 24-3 at 4. Instead, he left blank the signature and date lines under "Section A," and he signed the signature line under "Section C" and dated it as signed on November 5, 2020. *See id.* at 5. Because November 5, 2020 is prior to the November 10, 2020 date his grievance was accepted for review at the institutional level, the Court assumes that Moffitt submitted his grievance on November 5, 2020. *Id.* at 4-5.

In grievance log number SQ HC 20001546, Moffitt complained that on October 19, 2020 he had been seen by Dr. Lenoir, who told him that he did not meet the criteria for a lower bunk. *Id.* at 4. Moffitt claimed that he "told the nurse and doctor that [his] lower back [was] in excruciating pain & [he was] also over[]weight & [was] about 232 lbs. & [was] only 5'7'' tall &

3

[was] to[o] short and can bearly [sic] climb to the top bunk." *Id.* He further stated that he was "afraid [he would] slip & fall & get hurt & there[']s no steps or ladders to properly climb & access the top bunk." *Id.* Moffitt added that he "pulled [his] knee climbing up & down off the bunk . . . ." *Id.* Moffitt requested that a lower-bunk chrono[3] be issued "for [him] to properly access a bunk to sleep in." *Id.* RN Podolsky accepted and marked Moffitt's grievance as received at the institutional level on November 10, 2020. *Id.*

On May 4, 2021, Dr. Winslow, who at that time held the position of SQSP's Acting Chief Executive Officer, issued an "Institutional Level Response," in which he specifically indicated the disposition to be "No intervention." *Id.* at 2. As basis for this disposition, Dr. Winslow stated he reviewed Moffitt's grievance and health record, which indicated as follows:

- You have received primary care provider evaluation and monitoring for your history of back and knee pain.
- The primary care provider completed assessments, noted review of your history, current symptoms, and laboratory/imaging results, and developed a plan of care, including a repeat x-ray of the lumbar spine, physical therapy, and the medications acetaminophen and ibuprofen.
- The primary care provider determined you do not meet the criteria for a lower bunk chrono.
- Your most recent primary care provider encounters note focus[es] on concerns unrelated to your health care grievance issues, and on April 22, 2021, the primary care provider noted you had no joint or back pain, you were able to sit and stand up from the chair/examining table without difficulty, and your gait was non-antalgic (no abnormal pattern of walking secondary to pain that ultimately causes a limp).

*Id.* at 2. Dr. Winslow added as follows:

Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider. If you have additional health care needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy.

*Id.* at 3. Finally, Dr. Winslow included the following instructions for Moffitt:

If you are dissatisfied with the Institutional Level Response, follow the instructions on the CDCR 602 HC, Health Care Grievance, and submit the entire health care grievance package for headquarters[]

---

[3] A "chrono" is a form that allows prisoners to request certain medical accommodations as deemed necessary by medical staff.

4

>    level review. The headquarters[] level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies.

*Id.*

Moffitt's grievance was not submitted to the headquarters level for further review as reflected in the Health Care Appeals and Risk Tracking System ("HCARTS") appeal/grievance history printout attached to Acting Chief Martin's declaration. Martin Decl. ¶ 8, Ex. A (Dkt. 24-2 at 2). On his grievance form, below the portion labeled, "Section C," where the inmate may indicate his dissatisfaction with the Institutional Level Grievance Response, Moffitt put an "X" over the entire blank space. Dkt. 24-3 at 5. Moffitt signed "Section C" and dated it "11/5/20," which is the date he submitted his grievance to the institutional level. Additionally, "Section D," which normally indicates any disposition at the "Health Care Grievance Appeal Review [Headquarters] Level," is blank, confirming that Moffitt did not receive a disposition at the headquarters level. *Id.*

Meanwhile, Moffitt claims that he submitted grievance log number SQ HC 20001546 to the headquarters level but, as of January 5, 2023, the date of his amended complaint, he had not received a response, making this appeal "unavailable." Dkt. 15 at 1, 7. Moffitt does not include a copy of the grievance he submitted to the headquarters level, and instead he supports his exhaustion claim by referring to the grievance forms submitted by Dr. Winslow, stating: "Plaintiff exhausted all available administrative remedies before filing his suit. **See Exhibit A & B of Defendant Declaration of K. Martin in Support of Defendant's Motion for Summary Judgment.**" Dkt. 25 at 2 (emphasis in original) (citing Dkts. 24-2 at 2 and 24-3 at 2-5). As mentioned above, the exhibits provided by Dr. Winslow do not show that Moffitt submitted grievance log number SQ HC 20001546 to the headquarters level of review.[4]

---

[4] Moffitt did not submit any supporting exhibits with his opposition. *See* Dkt. 25. As a supporting exhibit to his original complaint, Moffitt attached the documents relating to grievance log number SQ HC 20001546. *See* Dkt. 1 at 4-6, 8. Within this attached exhibit is a document that seems to be out of place, and it is not included with the exhibits provided by Dr. Winslow. *Compare id.* at 7 *with* Dkt 24-3 at 2-5. That document is entitled, "Claimant Grievance Receipt Acknowledgement," from the Office of Grievances at SQSP dated June 16, 2021, which references "Log # 000000128843," and indicates that the Office of Grievances at SQSP received Moffitt's grievance on "06/15/2021" and would complete its review "no later than 08/15/2021." Dkt. 1 at 7. Nowhere in that document does it indicate whether "Log # 000000128843" includes

5

### C. Procedural Background

Moffitt filed the instant action, in which he raises allegations similar to those in his grievance involving an Eighth Amendment claim, but naming Dr. Winslow instead of Dr. Lenoir in his amended complaint. Dkt. 15. Moffitt claims in his amended complaint that grievance log number SQ HC 20001546 was "submitted to Headquarters[] Level, and as of the date of [the amended complaint], [he] ha[d] not received a response, making this appeal unavailable." *Id.* at 7.

Dr. Winslow moves for summary judgment under Federal Rule of Civil Procedure 56 on grounds that Moffitt failed to properly exhaust available administrative remedies before filing suit, as required by the PLRA. Dkt. 24. Moffitt filed an opposition, in which he also requests leave to file a second amended complaint to add Dr. Lenoir as a named defendant. Dkt. 25 at 2. Plaintiff claims that he "had his complaint typed and an error was made in not submitting Dr. Lenoir['s] name with Dr. D. Winslow's name as defendant." *Id.* at 2. Dr. Winslow filed a reply, which does not acknowledge Moffitt's request for leave to file a second amended complaint. Dkt. 26.

For the reasons outlined below, the Court **GRANTS** Dr. Winslow's motion for summary judgment, and it **DENIES** Moffitt's motion for leave to file a second amended complaint.

## II. DISCUSSION

### A. Dr. Winslow's Motion for Summary Judgment

#### 1. Standard of Review

"The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). To the extent that the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56. *Id.* at 1168. The burden is on the

---

any allegations similar to grievance log number SQ HC 20001546. *See id.* The document also included the following instructions for Moffitt: "Once you receive a response and if you are dissatisfied with the decision(s), you may file an appeal with the California Department of Corrections and Rehabilitation's [(CDCR's)] Office of Appeals." *Id.* Thus, it seems that the aforementioned document is *another* grievance that was filed for review at the institutional level and not at the *headquarters* level. Neither party refers to this document, and thus it need not be considered by the Court.

6

defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust. *Id.* at 1172. If the defendant meets that burden, the burden shifts to the prisoner to present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* The ultimate burden of proof remains with the defendant, however. *Id.*

If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

### 2. Analysis

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Ngo*, 548 U.S. at 93. A prisoner not only must pursue every available step of the prison appeal process but also must adhere to "deadlines and other critical procedural rules" of that process. *Id.* at 90. A prisoner must "exhaust his administrative remedies *prior* to sending his complaint to the district court." *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (emphasis added). The prisoner cannot comply with the PLRA's exhaustion requirement "by exhausting available remedies during the course of the litigation." *Akhtar v. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012) (citation omitted).

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). The CDCR provides its inmates and parolees the right to administratively grieve and appeal any "policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." Cal. Code Regs. tit. 15, § 3481(a).[5] Under the regulations

---

[5] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1,

7

effective June 1, 2020, there are two levels of review for non-health-care appeals by inmates, referred to as a grievance and an appeal. At the first level, the inmate submits a form CDCR 602-1 to the Institutional Office of Grievances at the prison or other facility where he is housed. *See id.* at § 3482(a), (c) (repealed eff. June 1, 2020). "In response, a claimant shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the Reviewing Authority's decision as to each claim." *Id.* at § 3481(a) (repealed eff. June 1, 2020). At the second level, an inmate dissatisfied with the Institutional Office of Grievances' decision at first level submits a form CDCR 602-2 to the CDCR's Office of Appeals in Sacramento. *Id.* at §§ 3481(a), 3485(a) (repealed eff. June 1, 2020).

Prisoners also may file complaints regarding healthcare policies, decision, actions, conditions, or omissions using a form CDCR 602 HC. Cal. Code Regs. tit. 15, § 3999.226(a), 3999.227. Such complaints are also subject to two levels of review—an institutional level of review and a headquarters level of review. *Id.*

The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218. California regulations require the prisoner " 'to describe the problem and action requested.' " *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting former Cal. Code Regs. tit. 15 § 3084.2(a)). A grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." *Griffin v. Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009) (citation and internal quotation omitted). To initiate the grievance process, an inmate must submit a CDCR Form 602 within thirty calendar days of the event or decision being appealed. *See* Cal. Code Regs. tit. 15, § 3482(b)-(d). The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Ngo*, 548 U.S. at 84.

---

2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. A prisoner must provide evidence, not just make conclusory allegations, to meet his burden to show that existing and generally available administrative remedies were effectively unavailable. *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016). A prisoner's "unsupported allegations" regarding impediments to exhaustion are insufficient to create a triable issue of fact. *Id.*

Here, the evidence submitted by Dr. Winslow shows that Moffitt did not file an appeal challenging the institutional level disposition of "No Intervention" as to grievance log number SQ HC 20001546, in which Moffitt claimed that his history of back and knee pain required the issuance of a lower bunk chrono. *See* Martin Decl. ¶ 8. The response to Moffitt's grievance at the institutional level informed him that he did not meet the criteria for a lower bunk chrono and further explained the steps he needed to take in order to exhaust available administrative remedies by submitting his grievance to the headquarters level of review. Dkt. 24-3 at 5-6. The Court has no record of Moffitt submitting grievance log number SQ HC 20001546 to the headquarters level of review. *See id.*; *see also* Dkt. 24-2 at 2. Thus, Dr. Winslow has met the initial burden as the moving party of producing evidence to demonstrate Moffitt's non-exhaustion, specifically by putting forth evidence that Acting Chief Martin had conducted a search of the Moffitt's appeal/grievance history and found no record that grievance log number SQ HC 20001546 was received at the headquarters level. *See Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). Under *Albino*, Dr. Winslow has therefore proven that there was an available administrative remedy that Moffitt failed to properly exhaust in connection with his section 1983 claim before

filing this action. *See Albino*, 747 F.3d at 1172.

The burden then shifts to Moffit to show that "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *See Paramo*, 775 F.3d at 1191. In his opposition, Moffitt seems to argue in a conclusory fashion that he "exhausted all available administrative remedies before filing his suit," but he fails to provide any documentary support. Dkt. 25 at 2. Instead, he relies on Dr. Winslow's exhibits of the documents relating to grievance log number SQ HC 20001546, which do not show that it was submitted to the headquarters level. *See* Dkts. 24-2 at 2, 24-3 at 2-5. Moffitt also earlier stated in a conclusory fashion in his amended complaint that the grievance process was "unavailable" to him because he submitted grievance log number SQ HC 20001546 to the headquarters level, but did not receive a response. *See* Dkt. 15 at 1, 7. Such conclusory statements that the grievance process was unavailable to him are insufficient to create a triable issue of fact. *See Draper*, 836 F.3d at 1079-80 (holding that plaintiff's statements that prison officials had "engaged in impeding and unethical conduct of obstructing" his inmate appeals "from being exhausted in a timely manner," and had "prohibited and impeded" his efforts to exhaust were insufficient to create a triable issue because the prisoner did not explain what kinds of impeding and unethical conduct occurred).

On this record, Moffitt has offered no evidence that he exhausted his administrative remedies as to his deliberate indifference claim before bringing this civil rights action, and he offers no reason that the exhaustion requirement should be excused. He has not, then, shown evidence that precludes summary judgment. The evidence produced by Dr. Winslow *is sufficient* to carry the ultimate burden of proof in light of Moffitt's verified factual allegations. Accordingly, Dr. Winslow is entitled to summary judgment under Rule 56.[6] *See Albino*, 747 F.3d at 1166.

---

[6] Dr. Winslow also argues in the alternative that Moffitt fails to show exhaustion of his administrative remedies because grievance log number SQ HC 20001546 "did not identify Dr. Winslow, nor is there a 'sufficient connection' between the allegations in the grievance and Dr. Winslow to give prison officials notice of any deprivation by Dr. Winslow." Dkt. 27 at 1; *see also* Dkt. 24 at 7-8. However, the Court need not address this alternative argument because it has already found that Dr. Winslow is entitled to summary judgment.

**B. Moffitt's Motion for Leave to Amend**

Also before the Court is Moffitt's motion for leave to file a second amended complaint, in which he seeks to add Dr. Lenoir as a defendant. Dkt. 25 at 2. Dr. Winslow did not file a response to Moffitt's motion.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007) (citations and internal quotation marks omitted). The decision to grant or deny a request for leave to amend rests in the discretion of the trial court. *See California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004).

Here, leave to amend is unwarranted because it would be futile. Moffitt seeks leave to amend to add Dr. Lenoir as a defendant. However, the Court would have concluded that Moffitt failed to exhaust his administrative remedies as to his deliberate indifference claim not only as to Dr. Winslow but also as to Dr. Lenoir because no evidence exists showing Moffitt submitted grievance log number SQ HC 20001546 to the headquarters level. Thus, granting Moffit leave to add Dr. Lenoir as a named defendant is futile because Dr. Lenoir would be entitled to summary judgment. *See Albino*, 747 F.3d at 1166. Accordingly, Moffitt's motion for leave to file a second amended complaint is **DENIED**. Dkt. 25.

**III. CONCLUSION**

For the foregoing reasons:

1. The Court **GRANTS** Dr. Winslow's motion for summary judgment on grounds that Moffitt failed to properly exhaust available administrative remedies before filing suit.[7] Dkt.

---

[7] Because the Court has granted Dr. Winslow's motion for summary judgment based on Moffitt's failure to exhaust available administrative remedies because he did not produce sufficient evidence showing he submitted grievance log number SQ HC 20001546 to the headquarters level, it need not address Dr. Winslow's alternative argument in support of summary judgment. *See* Dkt. 24.

11

24.  Pursuant to the law of the circuit, Moffitt's Eighth Amendment claim is **DISMISSED** without prejudice.

      2.     Moffitt's motion for leave to file a second amended complaint is **DENIED**.  Dkt. 25.

      3.     The Clerk of the Court shall terminate all pending motions and close the file.

      4.     This Order terminates Docket Nos. 24 and 25.

**IT IS SO ORDERED**.

Dated:  March 11, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**